**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **MICHAEL L. FOGLE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 4:06CV00595CDP** |
| | ) | |
| **ALAN BLAKE, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM AND ORDER

Plaintiff Michael Fogle is being detained at the Missouri Sexual Offender Treatment Center (MSOTC) pending a state-court determination as to whether he should be committed as a sexually violent predator (SVP) under Missouri law. In this pro se action, Fogle argues that MSOTC imposed sanctions upon him for violating institutional rules that further restricted his liberty inside MSOTC without first affording him procedural due process protections. Plaintiff also contends that the sanctions imposed on him were so onerous as to violate the Eighth Amendment's prohibition against cruel and unusual punishment.

Both Fogle and the defendants have moved for summary judgment. The facts are undisputed. Having reviewed the parties' briefs and evidence, I conclude that defendants are entitled to summary judgment because Fogle received all the process that was due him under the circumstances.

# **Undisputed Facts**

Plaintiff Michael Fogle is being detained at the Missouri Sexual Offender Treatment Center (MSOTC) in Farmington, Missouri, pending a state court's determination as to whether he should be committed as a sexually violent predator under the SVPA, Mo. Rev. Stat. § 632.480 *et seq.* Defendants Alan Blake, Martha Bellew-Smith, Deanna Wolf, Anita Payne, Clayton Miller, and Pat Weaver are employees at MSOTC.

On October 7, 2005, Fogle received a rule violation for "threatening bodily harm" when he said to another resident, "If you drop this fucking door on me one more time . . ." The offense of "threatening bodily harm" is defined as making a direct statement, either spoken or in writing, to harm another resident or staff. Fogle's violation was deemed intolerable and he was immediately placed on restriction for fourteen days. During this time, Fogle was: (1) confined to a portion of the ward designated the "restriction area" from 9 a.m. to 9 p.m.;[1] (2) required to sit in a hard plastic chair from 9 a.m. to 9 p.m.; (3) denied use of indigent funds; (4) denied purchases from the canteen; (5) denied use of all ward

---

[1] The "restriction area" is described as an area of approximately 50 square feet with a boundary delineated by red tape placed on the floor of the ward. Inside the "restriction area" is one table and one or more hard plastic chairs. A resident inside the "restriction area" may not leave the area - even to use the restroom or for meals - without prior approval from MSOTC staff.

electronic items (e.g., microwave and television); (6) denied receipt of packages (even previously approved purchases or gifts); (7) denied visitation; (8) denied use of the telephone (except to call his attorney); (9) denied access to the library; (10) denied use of all tobacco products; (11) denied use of certain personal property (e.g., "walk-man" radio); and (12) denied recreational activities. Fogle was orally told of the violation charged and was immediately placed on restriction, without any further hearing before the restriction began.

Both "civil detainees" and SVP's reside at MSOTC.[2]  The stated objectives of MSOTC are to protect the public and to enable its residents to become productive members of the community without further victimization of others. In furtherance of these objectives,  MSOTC uses a treatment model that stresses both cognitive and behavioral modification with the goal of preventing relapse of sexually deviant behavior. Additionally, each resident at MSOTC has a treatment team consisting of mental health professionals, including a psychiatrist, psychologists, social workers, recreational therapists, activity aides, registered nurses and security aides.

---

[2]Broadly, both those held at MSOTC as SVP's and those held at MSOTC awaiting a state court determination of their SVP status are "civil detainees" because the proceedings leading to their confinement are civil in nature.  As used in this opinion, however, "civil detainee" refers only to those held at MSOTC awaiting a state court determination of their SVP status - not those finally determined by a state court to be SVP's.

For persons who have already been adjudicated as SVP's, the treatment program consists of various phases and levels through which each sex offender must pass, progressively acquiring more skills and tools to prevent future sexual re-offending. The treatment goals in the first level include, among other things, the SVP's recognizing the legitimate authority of the program and society as a whole, the ability to accept and follow rules of correct behavior, the ability to accept responsibility for one's rule-violating actions and reasonable sanctions for that behavior, and the willingness to recognize the value of sexual offender treatment and its goals. MSOTC provides treatment to civil detainees who have not been adjudicated SVP's based on the same model as the treatment for SVP's, but without any emphasis on the detainee's sexual behavior.

In addition to the treatment program, the facility also has rules designed to provide a safe and therapeutic environment. Civil detainees such as Fogle are expected to comply with MSOTC rules and regulations, and the rules are written and provided to all residents. When a member of the MSOTC staff observes a resident violating the rules, the staff member completes an incident report and ward staff are informed of the violation. The resident is then informed of the offending behavior, and a consequence (i.e., restriction) is imposed immediately

on the resident. It is undisputed that this is what happened in Fogle's case.

Fogle was given a fourteen-day restriction, which is the most serious restriction, because his was considered a major rule violation affecting security because he threatened another resident. Lesser offenses can result in two or seven-day restrictions.

There are two methods by which a resident may appeal the imposition of a sanction for violating a rule. First, the resident may request that his treatment team expunge the violation. Fogle did this, and the treatment team refused to expunge the violation. If the resident is not satisfied with his treatment team's actions, then he can appeal to defendant Blake. If the resident is not satisfied with Blake's response, the resident may write to officials at the Missouri Department of Mental Health. Fogle did not take these further steps.

Second, the resident may file a grievance if he believes his rights have been violated. Grievances are reviewed by MSOTC staff who conduct an impartial review of the grieved matter. If dissatisfied with the resolution offered by the MSOTC staff, the resident may request review of the grievance by the Resident Rights and Ethics Committee (the "Committee"). If the resident does not accept the Committee's decision, he may appeal his grievance to defendant Blake or to the Client Rights Coordinator at the Missouri Department of Mental Health. Fogle

did not file a grievance.

## Discussion

In considering a motion for summary judgment, the Court must "view all of the evidence in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences to be drawn from the facts disclosed in the pleadings." Rech v. ConAgra, Inc., 987 F.2d 1357, 1359 (8th Cir. 1993). "Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Id. "Although the moving party has the burden of demonstrating the absence of genuine issues of material fact, the 'nonmoving party may not rest upon mere denials of allegations, but must instead set forth specific facts sufficient to raise a genuine issue for trial." Burchett v. Target Corp., 340 F.3d 510, 516 (8th Cir. 2003) (quoting Rose-Maston v. NME Hosps., Inc., 133 F.3d 1104, 1107 (8th Cir. 1998)).

### 1.    Treatment vs. Punishment

Fogle argues that he cannot be punished because he is a civil detainee. In response to that argument, defendants have asserted that the restriction was not punishment, but instead is treatment. But because Fogle has not been finally adjudged by a state court to be an SVP, the authority for defendants to provide treatment is not at all clear. It is not necessary for the court to determine whether

defendants had the authority to treat Fogle, however, because they did indeed have the authority to impose the restriction they imposed here in the interests of maintaining security at the facility.

A person involuntarily confined because there is probable cause to believe he is an SVP stands before the law in much the same way as a person involuntarily confined because there is reason to believe that he has committed a crime. <u>See</u> <u>Brown v. Budz</u>, 398 F.3d 904, 910 (7th Cir. 2005) (status of an Illinois detainee awaiting a civil committment trial under state Sexually Violent Persons Act found comparable to that of a pretrial detainee). In both cases, the person is lawfully restrained of his liberty and freedom of movement pending a final resolution of the government's case against him. As such, the due process rights of pretrial detainees serve as a guide to determining the due process rights of civil detainees.

In <u>Bell v. Wolfish</u>, 441 U.S. 520 (1979), the Supreme Court held that due process of law prohibited the government from punishing a pretrial detainee before an adjudication of guilt. But the Court went on to hold that not every restriction placed on a pretrial detainee, is considered punishment in the constitutional sense. <u>Id</u>. at 537-38. The government has

> legitimate interests that stem from its need to manage the facility in which the individual is detained. These legitimate operational concerns may require administrative measures that go beyond those

that are, strictly speaking, necessary to ensure the detainee shows up
for trial. For example, the Government must be able to take steps to
maintain security and order at the institution and make certain no
weapons or illicit drugs reach detainees.

Id. at 540. Consequently, restrictions imposed on a pretrial detainee are not

considered punishment as long as they are "reasonably related" to a legitimate

governmental objective such as maintaining the safety, security, and good order of

the detention facility. Id. at 537-40.

Assuming there is no evidence that detention facility officials expressly

intended to punish pretrial detainees, "whether . . . restrictions and practices

constitute punishment in the constitutional sense depends on whether they are

rationally related to a legitimate nonpunitive government purpose and whether

they appear excessive in relation to that purpose." Id. at 561. "These restraints

may at times be discomforting, but, as long as they are reasonably related to the

effective management of the confinement facility, they are not considered

punishment for the crime that the detainee is supposed to have committed."

Rapier v. Harris, 172 F.3d 999, 1003 (7th Cir. 1999) (internal quotation marks

omitted). Thus, a distinction is drawn "between punitive measures that may not

constitutionally be imposed prior to a determination of guilt and regulatory

restraints that may." Bell, 441 U.S. at 561. "If a restriction or condition is not

reasonably related to a legitimate goal - if it is arbitrary or purposeless - a court permissibly may infer that the purpose of the governmental action is punishment." Id. at 539. In deciding whether a particular measure is reasonably related to the effective management of the confinement, courts must be mindful that the implementation of such measures is "peculiarly within the province and professional expertise of corrections officials, and, in the absence of substantial evidence in the record to indicate that the officials have exaggerated their response to these considerations, courts should ordinarily defer to their expert judgment in such matters." Id. at 540 n.23 (internal quotation marks omitted).

Under Bell, Fogle's due process rights were not violated as a matter of law because he was not subjected to punishment. Fogle was placed on restriction for fourteen days after threatening to harm another resident. He was aware that he could be subject to these restrictions for violating conduct rules, and he knew what the rules and sanctions were because they were given to him in writing. Fogle was informed of his rule violation and immediately placed on restriction for fourteen days because his was considered a major rule violation affecting security. He was given the opportunity to grieve his status, and he actually began the process by requesting that his treatment team expunge the violation, but he took no further action after they refused. Because the restrictions placed upon Fogle as a

consequence for threatening to harm another resident were reasonably related to the legitimate goal of maintaining the security of the institution and its residents, this Court will defer to defendants' "expert judgment in such matters." Id. See also Smith v. Copeland, 892 F. Supp. 1218, 1233 (E.D. Mo. 1995), aff'd, 87 F.3d 265 (8th Cir. 1996) ("[T]here exists no basis in the Due Process Clause or elsewhere in the Constitution for requiring that discipline not be imposed upon a pretrial detainee for violations of institutional discipline without the particular procedural mechanisms invoked by plaintiff here, including notice, a hearing or specific findings, a right to counsel and an independent investigation of the charges . . . In this context, then, plaintiff's Due Process right is not to be punished for misconduct in a manner that is not reasonably related to a legitimate institutional objective.  The determination whether this right has been infringed does not extend to a de novo review of the jail official's decision whether and how to discipline plaintiff.").  Defendants are entitled to summary judgment on Fogle's due process claims.

### 3.  Defendants are entitled to summary judgment on Fogle's Eighth Amendment claim.

Defendants are also entitled to summary judgment on Fogle's claim that the sanctions imposed on him were so onerous as to violate the Eighth Amendment's

guarantee against cruel and unusual punishment.  While Fogle's claims are properly analyzed under the Due Process Clause of the Fourteenth Amendment rather than the Eighth Amendment, see Brown v. Budz, 398 F.2d at 910, there is little practical difference between the two standards because both utilize the "deliberate indifference" standard.  See Owens v. Scott County Jail, 328 F.3d 1026 (8th Cir. 2003).  To establish "deliberate indifference," Fogle must establish (1) that the harm was sufficiently serious - involving the deprivation of the minimal civilized measure of life's necessities; and (2) that a defendant must have a sufficiently culpable state of mind - that the official knew of and disregarded an excessive risk to plaintiff's health or safety.  Farmer v. Brennan, 511 U.S. 825, 834-37 (1994).  Fogle's evidence concerning the restrictions is such that no reasonable trier of fact could find that the defendants were deliberately indifferent to the conditions of his disciplinary restrictions.  The restrictions, while perhaps irritating and uncomfortable, did not deprive Fogle of life's necessities as a matter of law.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion for summary judgment [Doc. #19] is **DENIED**.

**IT IS FURTHER ORDERED** that defendants' motion for summary

judgment [Doc. #28] is **GRANTED**, and plaintiff's amended complaint is dismissed with prejudice.

**IT IS FURTHER ORDERED** that plaintiff's motion for judicial notice [Doc. #31] is **DENIED**.

**IT IS FURTHER ORDERED** that plaintiff's motion to appoint counsel [Doc. #34] is **DENIED.**

A separate Judgment in accordance with this Memorandum and Order is entered the same date.


_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 2nd day of October, 2007.